UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO TAPIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE BOEING COMPANY,<br><br>　　　　　Defendant. | No. 2:20-cv-02218-TLN-CKD PS<br><br><br>ORDER |

　　　　Plaintiff proceeds *pro se* in this action, which was referred to the undersigned pursuant to Eastern District of California Local Rules ("Local Rule") 302(c)(3). See 28 U.S.C. § 636(b)(1). On March 10, 2021, the court heard defendant's motion to dismiss the complaint for failure to state a claim, for improper venue, and for other relief. Plaintiff appeared *pro se* at the hearing; attorneys Brittany Sachs and Richard Lopez appeared on behalf of defendant. For the reasons stated below, defendant's motion to dismiss is granted and the complaint is dismissed with leave to amend.

　　　　Plaintiff's complaint, filed on November 5, 2020, alleges that he was discriminated and retaliated against by his former employer, defendant The Boeing Company, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Plaintiff asserts five claims as follows: (1) race discrimination under Title VII; (2) gender discrimination under Title VII; (3) unlawful seniority system under Title VII; (4) race discrimination under 42 U.S.C. § 1981; and (5)

1

unlawful retaliation under § 1981.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant moves to dismiss all claims for failure to state a claim. In the alternative, defendant moves to dismiss under Fed. R. Civ. P. 12(b)(3) or to transfer venue under 28 U.S.C. § 1406. In the further alternative, defendant moves under Fed. R. Civ. P. 12(f) to strike the complaint or portions of the complaint and requests an order under Fed. R. Civ. P. 12(e) requiring plaintiff to provide a more definite statement.

**I.     Factual Background**

Plaintiff, who is Mexican-American, was employed by defendant as a Structural Analyst Engineer beginning in 2012 and lasting until 2019 when he was terminated. From approximately March 2012 until September 2015, he worked as a Structural Analyst Engineer in Long Beach, CA. In September 2015, he accepted a different position with Boeing in Ladson, South Carolina where he worked until his termination in November 2019. ECF No. 1 ("Compl."), ¶¶ 3, 17, 55, 235.

**A. Events in Long Beach, CA (2012-2015)**

Plaintiff's manager in Long Beach, CA, informed him that he was expected to work hard, and that his performance review would result in a "met expectations" remark. Compl. ¶ 21. In performance reviews while working in Long Beach, California, plaintiff received "met expectations" remarks. Compl. ¶¶ 23.

Plaintiff alleges the atmosphere among his engineering team in Long Beach was that of an "old boys club." Compl. ¶ 29. Mistakes made by plaintiff were likely to receive more attention than mistakes made by other team members. Compl. ¶ 29.

While working in Long Beach, plaintiff suffered "verbal downgrading" of his work by senior engineers, which often occurred when new engineers were being introduced into the team. Compl. ¶ 32. Engineers other than plaintiff were allowed more time to complete their work. Compl. ¶ 39. Although plaintiff was one of the faster performers, the lead engineer would state otherwise to antagonize plaintiff. Compl. ¶ 30.

The lead engineer, John Ybarra, would at times refer to plaintiff by his ethnic origin as "Mexican" instead of using his name. Compl. ¶ 30. On one occasion in 2014, plaintiff heard a co-

worker state to another, while looking at plaintiff, "Mexicans love doing yard work and… labor related work." Compl. ¶ 41. On another occasion in 2014, a co-worker made a comment within auditory range of management "linking the color of plaintiff's pants with a terrorist". Compl. ¶ 46. In late 2014 or 2015, a co-worker commented to plaintiff and others that Mexicans were taking all the work. Compl. ¶ 48. Plaintiff reported the latter comment to the lead engineer, who responded that the commenting employee "is a good guy." Compl. ¶ 49.

Plaintiff alleges that, although he had a master's degree when he was hired, he and another engineer with a master's degree were compensated more akin to engineers with a bachelor's degree. Compl. ¶ 26. Plaintiff received promotional raises. Compl. ¶¶ 27, 50. He does not allege whether his pay was proportionate or disproportionate to other Boeing engineers with his level or a similar level of education and experience.

**B.  Events in South Carolina (2015-2019)**

In 2015, plaintiff was offered and accepted a new opportunity with Boeing and joined a new team located in Ladson, South Carolina. Compl. ¶ 55. Around September 14, 2015, plaintiff reported to his new position at the Ladson, South Carolina office. Compl. ¶ 61. While working there, plaintiff noted that some employees seemed to receive preferential roles not warranted by their performance. Compl. ¶¶ 238-39.

Plaintiff continued to suffer taunts and other comments by co-workers about his ethnicity. For example, a co-worker asked about plaintiff's breakfast smoothie- "what is that? Guacamole?" Compl. ¶ 71. Another co-worker stated that Mexicans had been "kicked out" of Florida. Compl. ¶ 111. On one occasion, plaintiff overheard a Hispanic/Latino co-worker questioned where he was from; when the co-worker answered that he was from Texas, the questioner responded, "aren't there jobs there[?]". Compl. ¶ 178. Plaintiff overheard these types of taunts or comments on two occasions while attending off-hours social events with co-workers. Compl. ¶¶ 72, 81.

Plaintiff also experienced harassment he describes as "systematic and silent" while working in Ladson, South Carolina. Compl. ¶ 113. Co-workers and managers engaged in behaviors that bothered him and which included making large or distracting hand gestures, swaying or pacing, obstructing or distracting plaintiff's peripheral vision and loud "sniffing."

1   Compl. ¶¶ 113, 114, 118, 153, 227. Plaintiff noticed these same types of bothersome behaviors by

2   random individuals while out in public. Compl. ¶¶ 146, 147, 153, 209, 230.

3         Plaintiff continued to get performance-based salary increases while working in Ladson,

4   South Carolina. Compl. ¶¶ 183, 192. At some point, he began to have problems with the lead

5   engineer, whom plaintiff did not think was the best candidate for the job. Compl. ¶¶ 204-06.

6   When plaintiff was requested to route issues through the lead engineer, plaintiff "did not agree."

7   Compl. ¶ 204. Around this time, plaintiff informed a manager that he intended to file a hostile

8   work environment complaint but declined to provide any details about the basis of his complaint.

9   Compl. ¶ 210.

10        On September 12, 2019, plaintiff had a general meeting with management and was again

11  told to route issues through the lead engineer. Compl. ¶ 213. Subsequently, when plaintiff refused

12  to work with the lead engineer, he was informed that he was in violation and that corrective

13  action would be taken. Compl. ¶ 215. Plaintiff brought up the issue of hostile work environment

14  to management and stated he was facing retaliation but stated he would not provide details

15  because he did not trust management. Compl. ¶¶ 213, 215. Subsequently, plaintiff submitted an

16  online internal ethics complaint. Compl. ¶ 219.

17        The next day, on September 13, 2019, plaintiff was again asked if he would work with the

18  lead engineer and plaintiff again refused. Compl. ¶¶ 220-21. Plaintiff was informed he was being

19  suspended without pay for ignoring a direct order and that he would be contacted by the

20  investigation team. Compl. ¶ 221-22.

21        Plaintiff had a meeting with an internal investigator and subsequently emailed a report to

22  the investigator on October 18, 2019. Compl. ¶¶ 224, 231.

23        Plaintiff was terminated from his employment with Boeing on November 7, 2019. Compl.

24  ¶ 234.

25      **II.**    **Standard for a Motion to Dismiss for Failure to State a Claim**

26        In considering a motion to dismiss for failure to state a claim upon which relief can be

27  granted, the court accepts as true the complaint's factual allegations. Erickson v. Pardus, 551 U.S.

28  89, 94 (2007). As a pro se pleading, plaintiff's complaint is liberally construed. Id.; Balistreri v.

4

1 Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

2 In order to avoid dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 662. A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).

### III.   Title VII Claims (Counts I, II and III)

Under Title VII of the Civil Rights Act of 1964 it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). "[T]his not only covers 'terms' and 'conditions' in the narrow sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment… in employment.'" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)). "In order to establish a prima facie case of discrimination, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003).

#### A. Administrative Remedies and the Statute of Limitations

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) on March 23, 2020. Compl. at ¶ 12. Based on this filing date, defendant contends all conduct that occurred prior to May 28, 2019 is unexhausted and time-barred for purposes of plaintiff's Title VII claims. ECF No. 6 at 5-6.

Plaintiff's Title VII claims are subject to the special statute of limitations applicable to Title VII actions, which requires a claimant to exhaust his administrative remedies by filing a charge of discrimination with the EEOC within the statutorily mandated deadline of either 180 or,

1  in some circumstances, 300 days from the alleged discriminatory act. See 42 U.S.C. § 2000e-
2  5(e)(1); Amtrak v. Morgan, 536 U.S. 101, 119 (2002). Based on the maximum period of 300 days
3  prior to plaintiff's March 23, 2020 EEOC filing, his civil action under Title VII can timely allege
4  conduct that occurred on or after May 28, 2019. See Id.

5  Plaintiff has timely filed this action for the purpose of challenging his suspension and
6  termination which occurred in late 2019. The allegations regarding conduct that occurred prior to
7  May 28, 2019 are, however, time-barred. Morgan, 536 U.S. at 112. The Supreme Court has made
8  clear that a plaintiff cannot make timely acts that fall outside the time period by alleging other
9  discrete acts that fall within the statutory time period. See Id. In particular, a termination that falls
10 within the limitations period cannot be used to pull into the suit other time-barred discriminatory
11 acts. Id. at 113. Nor can time-barred discriminatory acts justify a charge concerning a termination
12 that was not independently discriminatory. Id.

13 Plaintiff contends the statute of limitations does not apply because he raises a "pattern or
14 practice" claim. ECF No. 15 at 2. A Title VII claim premised on discriminatory pattern or
15 practice is a type of hostile work environment claim usually filed by the EEOC in its own name
16 and initiated by a Commissioner's charge in which the EEOC attempts to prove the existence of a
17 hostile work environment through a pattern or practice of systemic discrimination that occurs
18 over time. EEOC v. Shell Oil Co., 466 U.S. 54, 67 at n.19 (1984). Private, non-EEOC litigants
19 can advance pattern and practice claims in a class action suit, although at least one court has
20 considered pattern and practice claims in a consolidated suit involving multiple individual
21 plaintiffs. See King v. General Elec. Co., 960 F.2d 617 (7th Cir. 1992).

22 A successful Title VII pattern and practice action requires proof by a preponderance of the
23 evidence that disparate treatment based on discrimination was defendant's "standard operating
24 procedure" and that it was maintained through systematic, intentional discrimination. Penk v.
25 Oregon State Bd. of Higher Education, 816 F.2d 458, 463 (9th Cir. 1987). A prima facie case is
26 shown either by statistics or by direct and strong anecdotal evidence of intentional discrimination.
27 Stender v. Lucky Stores, Inc., 1991 U.S. Dist. LEXIS 16316, 57 FEP 1431, 1435 (N.D. Cal.
28 1991). In Penk, the anecdotal evidence was insufficient to establish a pattern and practice of

1  discrimination even where three individual Title VII violations had been demonstrated. 816 F.2d
2  at 463. In this case, in contrast, plaintiff proceeds as an individual plaintiff and has not pleaded
3  any statistics or anecdotal facts that support a plausible claim that race discrimination was
4  intentional, systematic and standard operating procedure. The allegation that plaintiff and one
5  other employee were paid salaries commonly paid to individuals with lower levels of education
6  does not suffice to plead a viable Title VII pattern and practice claim.

7  Plaintiff further alleges he was unaware of his rights regarding Title VII claims and
8  intended to file the EEOC charge sooner. ECF No. 15 at 3. To the extent plaintiff seeks equitable
9  tolling of the statutory deadline, these are not adequate supporting facts. "[A] pro se petitioner's
10 lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable
11 tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006). Plaintiff's ignorance of the law
12 does not excuse prompt filing. See Id. The special statute of limitations of 42 U.S.C. § 2000e-
13 5(e)(1) applies.

**B.  Race and Gender Discrimination under Title VII (Counts 1 and 2)**

15 Defendant argues plaintiff has failed to state a claim for race or gender discrimination. As
16 to both, defendant argues plaintiff (1) cannot establish he was performing competently in his job;
17 (2) fails to allege any facts that plausibly suggest his suspension and termination were
18 discriminatory; and (3) fails to plausibly allege that similarly situated individuals outside his
19 protected class were treated more favorably. ECF No. 6 at 13-16.

20 The complaint is devoid of factual allegations that plausibly suggest plaintiff's suspension
21 and termination were discriminatory or that similarly situated individuals outside his protected
22 class were treated more favorably. Instead, plaintiff has pleaded that he was suspended after
23 refusing to follow direct orders. This is inconsistent with a claim that he was discriminated
24 against on account of his race or gender.

25 Moreover, plaintiff makes no allegations attempting to show discriminatory motive
26 through circumstantial evidence. A recitation of facts regarding an adverse action without
27 plausible connection to race or gender is not cured by labels and conclusory statements about
28 discrimination. See, e.g., Austin v. Univ. of Or., 925 F. 3d 1133, 1138 (9th Cir. 2019). Plaintiff

7

does not allege, for example, that one or more similarly situated individuals outside of the protected class received more favorable treatment. See, e.g., McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 282 (1976) (holding that a plaintiff can establish a Title VII violation based on evidence that two white employees "were discharged for their alleged participation in a misappropriation of cargo… but that a fellow [non-white] employee… was not"); Noyes v. Kelly Servs., 488 F.3d 1163, 1172 (9th Cir. 2007) (evidence that an employer favored a "more junior, less qualified" religious employee over a non-religious employee supported an inference of discrimination); Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir.2003) (evaluating comparative evidence regarding two other employees).

Plaintiff further alleges he was subjected to racial and ethnic insults by co-workers as well as more subtle taunts or comments. This type of harassment is actionable if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). A hostile environment claim is, by nature, continuing, and must involve at least one act that occurred during the actionable period. Morgan, 536 U.S. at 115; Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003). Under some circumstances, intervening occurrences can separate prior incidents from more recent incidents such that the plaintiff may not recover for prior incidents. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1126 (9th Cir. 2004).

Plaintiff has not alleged that any statutorily proscribed harassment occurred during the actionable period that began on May 28, 2019. Accordingly, the complaint fails to state a timely harassment or hostile environment claim under Title VII.

**C. Unlawful Seniority System under Title VII (Count III)**

Plaintiff alleges there was "an undisclosed seniority system" at defendant's engineering offices that resulted in disparate treatment to non-white engineers. Compl., ¶ 259. While Title VII does not define "seniority system," in the area of labor relations, "seniority" is a term that connotes length of employment, and the principal feature of any and every "seniority system" is that preferential treatment is dispensed on the basis of some measure of time served in employment. Cal. Brewers Assoc. v. Bryant, 444 U.S. 598, 606 (1980).

Title VII provides with respect to seniority or merit systems:

> Notwithstanding any other provision of this title [42 USCS §§ 2000e et seq.], it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin….

42 U.S.C. § 2000e-2(h).

The Supreme Court has construed this provision to mean that "absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." Lorance v. AT&T Techs., 490 U.S. 900, 905 (1989), *superseded by statute on other grounds*. Thus, for liability to be incurred there must be a finding of actual intent to discriminate on statutorily proscribed grounds on the part of those who negotiated or maintained the seniority system. Id.

Plaintiff alleges merely leadership in defendant's organization reflected "a demographic of several decades in the past" and that race was a "motivating factor" in defendant's discriminatory treatment against him. Compl., ¶ 259. These allegations fail to plausibly allege that defendant maintained an unlawful seniority system through an intent to discriminate. The complaint fails to state a valid claim for an unlawful seniority system under Title VII.

**IV.   Section 1981 Claims (Counts IV and V)**

**A. Statute of Limitations**

Plaintiff's claims under 42 U.S.C. section 1981 are subject to the four-year statute of limitations in 28 U.S.C. § 1658. See Johnson v. Lucent Techs., Inc. 653 F.3d 1000, 1007 (9th Cir. 2011). Plaintiff's complaint was filed on November 5, 2020. Accordingly, allegations of discrimination, harassment and retaliation that occurred prior to November 5, 2016 are time-barred for purposes of the Section 1981 claims. See Id.

////

////

**B. Race Discrimination under Section 1981**

Title 42 of the United States Code § 1981 specifically prohibits racial discrimination. Jones v. Bechtel, 788 F.2d 571, 574 (9th Cir. 1986). To prevail, a plaintiff must initially plead and ultimately prove that, but for race, he would not have suffered the loss of a legally protected right. Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009, 1019 (2020).

As set forth above, the complaint alleges plaintiff was suspended after failing to obey orders. The allegations regarding the events leading up to the suspension and termination are inconsistent with a claim that racial discrimination was the determining factor. Moreover, plaintiff fails to allege a discriminatory reason for his suspension or termination or facts that plausibly suggest racial discrimination was the determining factor. Since the complaint is devoid of allegations demonstrating that race was the determining factor for any adverse employment action, plaintiff has failed to state a section 1981 race discrimination claim.

**C. Retaliation under Section 1981**

Title 42 U.S.C. § 1981 does not include an express retaliation provision, but the Ninth Circuit has held that it encompasses retaliation claims. See Manatt v. Bank of America, 339 F.3d 792, 800 (9th Cir. 2003). A section 1981 retaliation claim is analyzed under the framework used for a claim for retaliation under Title VII. Id. at 801. A prima facie case of retaliation requires proof of the following elements: (1) plaintiff engaged in activity protected under Title VII, such as the filing of a complaint alleging racial discrimination, (2) he suffered adverse employment action; and (3) a causal link exists between the two events. Id.; see Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994). In order to prevail on the claim, plaintiff would additionally have to show facts allowing an inference that defendant was aware plaintiff engaged in protected activity. See Read v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003), opinion amended on denial of reh'g, 00-3599, 2003 U.S. App. LEXIS 8688 (9th Cir. May 8, 2003).

Plaintiff alleges he submitted an "ethics complaint" on September 12, 2019. Compl., ¶¶ 210, 213, 215, 219. Defendant contends this internal complaint was not protected activity within the meaning of section 1981. Memo at 15.

Making an informal complaint to a supervisor can constitute protected activity, see EEOC v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989), but not every complaint made to a supervisor implicates section 1981, see Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411 (9th Cir. 1987). In order to succeed on this claim, plaintiff must have had a reasonable belief that his internal complaint protested a race-related unlawful employment practice. See Trent v. Valley Elec. Ass'n, 41 F.3d 524, 526 (9th Cir. 1994); see also Jurado, 813 F.2d at 1411 (complaint to a supervisor regarding an English-only on-air requirement at a radio station does not constitute protected activity); Daly Cazier Enters., Inc., No. CV-05-5059, 2006 U.S. Dist. LEXIS 80847 (E.D. WA November 6, 2006), at *5 (where "no reasonable person could conclude the incident rises to the level of a violation of § 1981, the underlying complaint does not constitute statutorily protected activity").

Here, a review of Exhibit B demonstrates that plaintiff's lengthy internal complaint did not allege any race-related harassment. Plaintiff's internal complaint used the term "hostile work environment" but did not describe any conduct directed at plaintiff's race. Compl., Ex B. Accordingly, the facts alleged fail to plausibly suggest plaintiff reasonably believed he was protesting a race-related unlawful employment practice by filing his internal complaint or that anyone could construe it as such. Since there are no facts plausibly suggesting that plaintiff engaged in statutorily protected activity with a causal link to his suspension and termination, the complaint fails to allege a valid retaliation claim under section 1981.

**V.     Venue and the Motion to Strike**

Because the complaint is being dismissed for failure to state a claim, the court declines to consider defendant's further motions at this time. The motion to dismiss for improper venue and the motion to strike are denied without prejudice to renewal.

Accordingly, it is hereby ordered that:

1.     Defendant's motion to dismiss (ECF No. 5) is granted with leave to amend. Plaintiff may proceed with this action by filing an amended complaint attempting to state a valid claim for relief, but he is not obligated to proceed.

////

2. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Federal Rules of Civil Procedure and the Local Rules of Practice if he chooses to do so. An amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint"; if plaintiff chooses to file an amended complaint, he must file an original and two copies. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

Dated: March 12, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8.Tapia.2218.dismiss